Fred L. and Mary A. ENGLE, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 81–2463.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1982.

Decided May 7, 1982.

Michael J. Conlan, Quarles & Brady, Milwaukee, Wis., for petitioners-appellants.

Mary Lou Fahey, Dept. of Justice, Tax Div., Washington, D. C., for respondent-appellee.

Before PELL, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and BAUER, Circuit Judge.

PELL, Circuit Judge.

Taxpayers Fred and Mary Engle appeal from a decision of the United States Tax Court upholding a determination by the Commissioner that they were not entitled to a percentage depletion allowance on two oil and gas leases for the year 1975. The Engles had received advance royalties as a result of their assigning the leases during the taxable year. No physical extraction of oil or gas from the depletable properties had occurred during 1975. The Tax Court held that 26 U.S.C. § 613A(c) (1976)[1] permits the percentage depletion deduction only if there is some physical extraction of oil or gas during the taxable year.

The sole issue on appeal is whether the Tax Court correctly interpreted section 613A(c) to preclude a taxpayer otherwise entitled to the percentage depletion allowance from claiming the deduction if there was no physical extraction of oil or gas from the depletable properties during the year for which the percentage depletion allowance is claimed.

## I. FACTS

The facts are undisputed. Fred and Mary Engle are husband and wife. They filed a joint federal income tax return for 1975. During that year, Fred Engle acquired two oil and gas leases covering a total of 240 acres of land in Wyoming. Both leases were assigned by Engle to different parties in October, 1975. Engle received advance royalties of $7,600 from the two assignments. This $7,600 was the only taxable income received from the properties during 1975. No discovery or exploratory work was done on the properties covered by the leases during the taxable year; no gas or oil was extracted from the properties that year.

The Engles claimed a 22% depletion deduction, pursuant to section 613A. The Commissioner determined that the Engles were not entitled to the deduction because there was no "average daily production,". § 613A(c), of domestic crude oil or natural gas and no average daily secondary or tertiary production of domestic crude oil or natural gas during 1975. The Commissioner assessed a deficiency of $4,957.55.[2] A majority of the Tax Court upheld the Commissioner's interpretation in a majority and concurring opinion that together span forty-six pages.[3] Judge Fay strongly dissented from the conclusion that the "average daily production" language of section 613A(c) makes actual physical extraction of gas or oil a prerequisite to the percentage depletion deduction.

## II. DISCUSSION

We note at the outset that the pertinent language of section 613A(c) has not previously been interpreted by a court of appeals. We must consider the statutory language, pertinent legislative history, and the judicial interpretation of the percentage depletion allowance as it existed prior to enactment of section 613A[4] in construing the challenged provision. We begin by setting forth the statutory scheme for percentage

1. Unless otherwise indicated, all statutory references in this opinion are to the Internal Revenue Act of 1954, as amended, codified at Title 26 of the United States Code.

2. The deficiency also reflects other items of adjustment to which the appellants have not taken exception.

3. The Tax Court held that the appellants were entitled to a cost depletion allowance, see § 612. There is, however, no indication that the taxpayers ever claimed cost depletion.

4. The Government appears to contend that judicial interpretations of section 613, the statutory section governing percentage depletion prior to enactment of section 613A, are irrelevant to this appeal because of the impact of section 613A. We disagree. As discussed in more detail *infra*, section 613A(c)(1) requires computation in accordance with section 613. Further, we think that the prior statutory scheme is relevant to the extent that the current statutory language fails to evidence a clear intent on the part of Congress to effect a different result under the Tax Reduction Act of 1975, Pub.L. No. 94–12, 89 Stat. 26 (1975). *Cf. Helvering v. Morgan's, Inc.*, 293 U.S. 121, 126–27, 55 S.Ct. 60, 61–62, 79 L.Ed. 232 (1934) (construing the phrase "taxable year" by reference, in part, to interpretation of the term under previous revenue laws).

depletion allowances as it existed prior to enactment of the Tax Reduction Act of 1975, Pub.L. No. 94–12, 89 Stat. 26 (1975) (1975 Act).

### A.  Sections 611 and 613 of Title 26.

Prior to promulgation of the 1975 Act, percentage depletion allowances were governed solely by sections 611 and 613. Section 611(a) states, in relevant part, that "there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion .... " § 611(a). Section 613, entitled "Percentage Depletion," states, in part: "In the case of the mines, wells, and other natural deposits listed in subsection (b), the allowance for depletion under section 611 shall be the percentage, specified in subsection (b), of the *gross income from the property* .... " § 613(a) (emphasis added).

The Supreme Court made clear that if the depletable properties resulted in gross income to the taxpayer, the percentage depletion allowance was applicable whether or not any physical extraction occurred during the taxable year. *E.g., Herring v. Commissioner*, 293 U.S. 322, 55 S.Ct. 179, 79 L.Ed. 389 (1934). The ruling in *Herring* was in response to the Commissioner's conclusion that section 214(a)(9) of the Revenue Act of 1926 contemplated actual production as a prerequisite to the percentage depletion allowance. The Commissioner had reasoned that no oil or gas well existed absent production and the statutory language permitted the "reasonable allowance for depletion" only "[i]n the case of mines, oil and gas wells .... " It is clear, therefore, that the Engles would have been entitled to the percentage depletion allowance on the basis of their advance royalties had this case arisen prior to promulgation of the 1975 Act.

It was also established, prior to the 1975 Act, that if *no* production of oil or gas occurred prior to cancellation of the lease, the taxpayer was required to restore the previously deducted depletion to income. *Douglas v. Commissioner*, 322 U.S. 275, 285, 64 S.Ct. 988, 994, 88 L.Ed. 1271 (1944); 26 C.F.R. §§ 1.612.3(a)(2) and (b)(2) (1981). As

the Tax Court noted in the instant case, this rule constituted at least an implicit requirement of actual production of oil or gas at some point in time.

### B.  The 1975 Act.

The 1975 Act essentially eliminated the percentage depletion allowance in the case of oil and gas wells except as to certain domestic gas wells and independent producers and royalty owners. *See* §§ 613A(a), (b), and (c). The latter exception is the one relevant to this appeal. That subsection provides in part:

(c) Exemption for Independent Producers and Royalty Owners—

(1) In general.—Except as provided in subsection (d), the allowance for depletion under section 611 shall be computed in accordance with section 613 with respect to—

(A) so much of the taxpayer's average daily production of domestic crude oil as does not exceed the taxpayer's depletable oil quantity; and

(B) so much of the taxpayer's average daily production of natural gas as does not exceed the taxpayer's depletable natural gas quantity;

and the applicable percentage (determined in accordance with the table contained in paragraph (5)) shall be deemed to be specified in subsection (b) of section 613 for purposes of subsection (a) of that section.

§ 613A(c)(1).

A majority of the Tax Court reasoned that physical extraction during the taxable year is a prerequisite if the percentage depletion allowance is to be determined "with respect to ... average daily production." The Tax Court also relied on language in two subsections which specify the tentative number of barrels in a taxpayer's "depletable oil quantity" and the applicable percentage to be used in computing the percentage depletion deduction. Each of these tables refers to "production during the calendar year." §§ 613A(c)(3) and (5). Because of this language, the Tax Court concluded that "the express language of section 613A(c)

limiting the percentage depletion deduction to stated quantities of production is so clear that it permits no other reasonable interpretation" than that urged by the Commissioner.

In his brief before this court, the Commissioner argues that the term "production" means marketable oil or gas and, therefore, Congress clearly contemplated physical extraction in using that term. The Commissioner reasons that only if this extraction prerequisite is satisfied, should one refer to section 613(a). He concludes, as did the Tax Court, that the reference in section 613A(c) to "comput[ation] in accordance with section 613" was intended by Congress to incorporate into section 613A the numerous Regulations, Revenue Rulings and court opinions that had interpreted how the "gross income from the property" and the "taxable income from the property" were to be computed pursuant to section 613.

The appellants maintain, by contrast, that one must first look to section 613 and determine whether there is gross income from the depletable property. If there is, the percentage depletion allowance is available to the taxpayer regardless of whether physical extraction occurred during the year for which the deduction is claimed. The reference to "average daily production" in section 613A constitutes a *limitation* on the amount of deduction that a taxpayer may claim rather than a prerequisite.[5]

We will analyze this statutory language in Section II(D), *infra*, of this opinion. We do note at this time that, contrary to the conclusion stated by the Tax Court, we find the statutory language to be ambiguous. We therefore turn to the legislative history of the statute.

### C. Legislative History.

An understanding of legislation before Congress in both 1974 and 1975 is necessary to determine the relevance of portions of the legislative history relied on by the parties.

During 1974, the House Committee on Ways and Means considered H.R. 17488. 93d Cong., 2d Sess. (1974). That bill generally repealed percentage depletion. It allowed three exemptions from the repeal including one for small producers.[6] The bill was reported out of Committee but no further action was taken on it. It was never reviewed by the Senate, the Finance Committee of the Senate, or the Joint Committee.

In 1975, H.R. 2166, 94th Cong., 1st Sess. (1975), was ordered reported to the House. There was *no* provision in the Committee version of that bill eliminating percentage depletion on income from oil and gas wells.[7] A House floor amendment introduced repeal of percentage depletion into H.R. 2166. 121 Cong.Rec. 4651–4652 (1975). That amendment contained none of the exceptions that had been part of H.R. 17488.

5. For instance, assume that during 1975 a depletable property produced 800,000 barrels of oil, none of which represented secondary or tertiary production. Section 613A(c)(3)(B) provides that the taxpayer would have a depletable oil quantity of 2,000 barrels. In order to determine the allowable percentage depletion, one would first establish the average daily production by dividing 800,000 by 365 days, § 613A(c)(2)(A), which results in approximately 2,190 barrels. This exceeds the depletable oil quantity of 2,000 barrels and, therefore, the taxpayer could claim the percentage depletion allowance under section 613A(c)(1) with respect to only a portion of his actual production.

As the Tax Court noted, the "average daily production" language cannot state an absolute ceiling on quantities of production entitled to percentage depletion because other subsections prescribe specific rules for treatment of pro-

duction in excess of the tentative barrel limitations stated in section 613A(c)(3)(B). *See* § 613A(c)(7). This does not, in our view, preclude the appellants' argument that the references to "average daily production" are intended to distinguish the production eligible for treatment under section 613A(c)(1) from that which is subject to the "special rules" of section 613A(c)(7).

6. The exemptions for production from stripper wells and the North Slope of Alaska are irrelevant to the case at bar.

7. The related report of the House Committee on Ways and Means, H.R.Rep.No.94–19, 94th Cong., 1st Sess. (1975), U.S.Code Cong. & Admin.News 1975, p. 54, makes no reference to percentage depletion.

H.R. 2166 then went to the Senate where an exemption for independent royalty owners and producers was added. The Senate amendment differed from the exemption that had been contained in H.R. 17488 in several respects. For example, the Senate amendment allowed percentage depletion at a rate of 22% and with respect to an average daily production of 2,000 barrels whereas H.R. 17488 had provided for percentage depletion at the rate of 15% with respect to the first 3,000 barrels of production per day. The Conference Committee considered the Senate amendment, see H.R.Conf.Rep.No. 94–120, 94th Cong., 1st Sess. 6768, *reprinted in* [1975] U.S.Code Cong. & Ad.News 122, 132–34 (Conference Committee Report), and modified it in some respects not relevant to the issue before this court. This amendment was later codified as section 613A(c).

The only reports that discuss the retention of percentage depletion for independent producers and royalty owners are *H.R. 17488: Energy Tax and Individual Relief Act of 1974,* H.R.Rep.No.93–1502, 93d Cong., 2d Sess. 46 (1974) (H.R. 17488 Report), and the Conference Committee Report cited above. As at least one commentator has noted, there is little record of meaningful Congressional debate on the provisions that were codified as section 613A, largely because of the rush to pass the 1975 Act. Bavenic, *Continued Availability of Percentage Depletion on Oil and Gas,* 23 Oil & Gas Tax Q. 204, 204 (1975).

The Government has relied heavily in its brief on the H.R. 17488 Report. Initially, we must assess whether that reliance is warranted. The report states in part: "[A] lease bonus paid to the lessor of mineral lands in a lump sum or in installments is independent of any actual production from the lease and thus would not be in any of the exemptions." H.R. 17488 Report at 46. Because lease bonuses and advance royalties have been treated similarly for tax purposes, it is apparent that the above-quoted language would be relevant to this case had H.R. 17488 been enacted into law.

The Commissioner argues that the H.R. 17488 Report is relevant to this case on the

authority of *Helvering v. Morgan's, Inc.,* 293 U.S. 121, 55 S.Ct. 60, 79 L.Ed. 232 (1934), and *Helvering v. New York Trust Co.,* 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361 (1934). The *Morgan's* Court was construing the term "taxable year" as used in section 200(a) of the Revenue Act of 1926. That Court stated "the true meaning of a single section of a statute in a setting as complex as that of the revenue acts cannot be ascertained . . . if the mind be isolated from the history of the income tax legislation of which it is an integral part." 293 U.S. at 126, 55 S.Ct. at 61 (citation omitted). The *Morgan's* Court was not, however, discussing whether legislative history of a bill *never enacted* was relevant to its interpretation of section 200(a); rather, the Court referred to the rule established pursuant to earlier *enacted* revenue laws that "taxable year" related to a twelve-month accounting period of the taxpayer. Similarly, the references in *New York Trust Co.* to legislative intent cannot be read as mandating consideration of the legislative history of a bill that was never enacted.

The Commissioner has failed to provide persuasive precedent for his contention that the legislative history of H.R. 17488 is relevant to this appeal. We note that the Tax Court did not rely on the H.R. 17488 Report. We think that the legislative developments in 1974 and 1975 undercut the Commissioner's reliance on statements pertinent to H.R. 17488. In the Committee version of H.R. 2166, the House *retained* the percentage depletion rules as they then existed. This is the opposite position from that taken by the same Committee in H.R. 17488. It is extremely difficult, as a matter of common sense, to conclude from this pattern that the intent of the House in 1974 remained unchanged in 1975. Second, the Senate never considered H.R. 17488. Although the Senate was undoubtedly aware that H.R. 17488 had contained an exemption for independent producers and royalty owners, the Senate version of H.R. 2166 did not contain an exemption identical to that contained in H.R. 17488. On the basis of these facts, we cannot conclude that the intention of the House Ways and Means

Committee in 1974 to abolish percentage depletion for advance royalties was necessarily shared by the legislators who eventually enacted H.R. 2166. We find, therefore, that remarks contained in the H.R. 17488 Report are of little, if any, relevance to the issue before us.

Turning to the scant legislative history that is relevant to the enacted legislation, the Government relies on the following passage:

> The conference substitute follows the Senate amendment in providing a small producer exemption from the repeal of percentage depletion for oil and gas. Initially the exemption ("depletable oil quantity") is 2,000 barrels of average daily production (or 12,000,000 cubic feet of natural gas).

Conference Committee Report at 68, *reprinted in* [1975] U.S.Code Cong. & Ad. News 122, 133. The Government also quotes the statement by Representative Vanik that the Committee version of H.R. 2166 provided "a scheduled reduction in barrels of daily oil production eligible for 22 percent depletion which goes down to 1,000 barrels." 121 Cong.Rec. 8924 (1975). Finally, the Commissioner refers to statements made during Congressional debates which indicate that Congress was primarily concerned with encouraging further exploration of domestic oil and gas resources at the time it enacted the 1975 Act.[8] This concern, in the appellee's view, compels the conclusion that Congress intended the percentage depletion deduction to be available only when physical extraction of gas or oil occurred.

The taxpayers also rely on several portions of the Conference Committee Report. First, they quote: "[T]he Senate amendment retains percentage depletion at 22 percent on a permanent basis for the small independent producer to the extent that his average daily production of oil does not exceed 2,000 barrels a day, or his average daily production of natural gas does not exceed 12,000,000 cubic feet." Conference Committee Report at 67, *reprinted in* [1975] U.S.Code Cong. & Ad.News 122, 132. They reason that the word "retains" evidences a Congressional intent to leave undisturbed the body of prior law that premised percentage depletion on gross income regardless of physical extraction. Second, the appellants cite several portions of the Conference Committee Report which refer to the exemption as the "small producer exemption." *Id.* at 67–68, *reprinted in* [1975] U.S. Code Cong. & Ad.News 122, 133–34. In the taxpayers' view, this language supports their argument that the "average daily production" language of section 613A(c) states only a *limitation* on the quantity of production eligible for the percentage depletion allowance.

### D. Analysis.

Looking first at the statutory language itself, we find the arguments presented by both parties to this controversy to be reasonable interpretations. As the Government asserts, section 613A(c) makes repeated reference to the term "average daily production." Further, the charts contained

---

**8.** *E.g.* 121 Cong.Rec. 4606 (1975) (remarks of Rep. Rhodes) ("I think we should all recall that one of the reasons for this bill being brought here with some haste is the fact that we have a shortage of domestic petroleum").

The Government also relies on language utilized by the Senate Committee on Finance when it considered certain technical changes in section 613A after enactment of the legislation: Under the other exception (the "small producer exemption"), percentage depletion is allowed for a limited amount of production from wells located within the United States. The amount of production eligible for percentage depletion is an average of 2,000 barrels per day (or its equivalent in cubic feet of

gas) for 1975 and phases down to an average of 1,000 barrels per day (or its equivalent in cubic feet of gas) for 1980 and thereafter. S.Rep.No.94–938, 94th Cong., 2d Sess. 424 (1976) U.S.Code Cong. & Admin.News 1976, p. 2897. The Government maintains that this report is entitled to consideration as a "secondarily authoritative expression of expert opinion," citing *Bobsee Corp. v. United States*, 411 F.2d 231, 237 n.18 (5th Cir. 1975). We need not resolve what weight, if any, should be attributed to this quotation because we find it no more explicit as to Congressional intent than the language of the statute or the Conference Committee Report.

in subsections 613A(c)(3) and (5) suggest that Congress was focusing on actual production during the taxable year for which the depletion allowance was claimed.

On the other hand, it is equally clear that the overriding effect of section 613A is to limit the percentage depletion allowance in the case of oil and gas wells. Section 613A(c) makes an exception for "small producers." To that end, some specification of the quantity of oil or gas for small producer eligibility was necessary. Congress might well have chosen to articulate this limitation by reference to "average daily production." It is also true, as the appellants urge, that interpreting physical extraction to be a prerequisite could lead to absurd results. Pursuant to such an interpretation the Engles might have claimed the depletion allowance had one barrel of oil been produced from the leased properties during 1975. Further, the section 613 basis of calculation by reference to gross income is explicitly incorporated into section 613A by the provisions of both sections 613(d) and 613A(c). Nothing in the statutory language specifically supports the Tax Court's conclusion that Congress intended to incorporate only the methods of calculating "gross income from the property" and "taxable income from the property" while abandoning gross income as the basis of the deduction.

The legislative history is of little help in resolving the statutory ambiguity. A Congressional interest in furthering exploration of domestic sources of gas and oil is not inconsistent with applicability of the percentage depletion allowance to advance royalties. The established rule that deducted depletion must be restored to income if there is no production of oil or gas prior to cancellation of the lease, *Douglas v. Commissioner*, 322 U.S. 275, 285, 64 S.Ct. 988, 994, 88 L.Ed. 1271 (1944), in itself provides an incentive to production.

The portions of the Conference Committee Report cited by the Government do little more than repeat, without clarifying, the statutory references to average daily production. We find nothing in the cited language that elucidates whether "average daily production" was intended as a prerequisite or merely as a limitation on the amount of production subject, without invocation of the "special rules" of section 613A(c)(7), to the percentage depletion allowance.

Similarly, we cannot find dispositive the Conference Committee's use of the word "retains." In light of the general repeal of the allowance in the case of oil and gas wells effected by section 613A, the section 613A(c) provision clearly does "retain" percentage depletion for small producers whether or not physical extraction is made a prerequisite.

Section 613A(c) not only fails to address clearly the situation at bar; its impact is similarly ambiguous whenever physical extraction and gross income resulting from that production occur in different taxable years. The lengthy dissent to the Tax Court opinion, written by Judge Fay, spends considerable time pointing out these problems. Without setting forth in detail his analysis, we do note one of the problems left unsolved by the statute. In the case of a taxpayer who had an "average daily production," as the Commissioner construes that term, of 100 barrels a day in 1980 but received no gross income from that production until 1981, the "prerequisite" of actual production in 1980 would be satisfied but calculation of the percentage depletion allowance for that year, based on gross income, appears impossible because the depletable properties produced no income during the taxable year.

Section 613A(c) provides no method for "converting" the barrels to income so as to enable the taxpayer to claim the deduction in 1980. If the allowance with respect to the 100 barrels average daily production is instead allowed in 1981, the result is at odds with the statutory language defining "average daily production" in terms of the taxable year, § 613A(c)(2), because the "production" occurred in 1980. Similarly, it becomes unclear whether the applicable depletable oil quantity, *see* § 613A(c)(3), should be that stated for 1980 or 1981 and what "applicable percentage," *see* § 613A(c)(5), should apply. Regulations proposed by the Treasury Department would allow the deduction in 1981 but no percentage depletion allowance in 1980 on

these facts. Proposed Income Tax Regulations § 1.613A–3(a)(4)(7), 42 Fed.Reg. 24281 (May 3, 1977).[9] The obvious difficulty with this proposed regulation is that it is inconsistent with the language of section 613A(c) if "production" means literal physical extraction during the taxable year for which the allowance is claimed.[10]

In summary, we find little guidance in either the statutory language or the relevant legislative history as to whether Congress intended to eliminate the percentage depletion allowance for advance royalties.

## CONCLUSION

In his concurring opinion, Judge Goffe states: "The majority opinion has, in my view, taken a mangled statute that is unattended by any germane or informative legislative history and has interpreted it by a direct and simple construction of one of the least ambiguous words in the statute: production." Insofar as the Tax Court concludes that "production" requires physical extraction, the construction is indeed straightforward. To conclude that production is a *prerequisite*, however, is a far less "simple" and far less justified interpretation.

The efforts of the Tax Court, as demonstrated by the length of its opinions, to settle on a reading of the statute that will permit consistent application were unsparing. As the hypothetical situation above illustrates, however, the result reached by the Tax Court does not resolve all the statutory ambiguities that pertain to receipt of income from the depletable properties in a different year from the year in which physical extraction occurs.

The reading urged by the taxpayers does not deny that physical extraction is inherent in the term "production." It differs from the Tax Court's interpretation in that it characterizes "average daily production" as a limitation rather than as a prerequisite. Admittedly, this reading of the statute does not clarify all the ambiguities inherent in section 613A(c). For instance, it does not resolve in what year the percentage depletion allowance should be taken if physical extraction occurs in a year *prior* to the receipt of related gross income.

We cannot reject the taxpayer's reading of the statute merely because it leaves unanswered questions. The interpretation of the Tax Court suffers the same defect. To the extent that the Treasury Department and the Tax Court *have* resolved these questions, they have done so by starting with the conclusion that production is a prerequisite and construing other ambiguous portions of the statute so as not to conflict with that interpretation.

The reading of the statute endorsed by the Tax Court effects a drastic change from the prior law regarding the availability of percentage depletion allowances for ad-

**9.** Our attention has been called to no proposed regulation specifically addressing the applicable percentage depletion quantity and the applicable percentage in such a case. In his concurring opinion below, Judge Goffe seems to assume that the 1981 quantity and percentage would apply under the proposed regulations, a result with which he disagrees.

**10.** The result urged by the Commissioner in this case, a denial of the percentage depletion deduction with respect to advance royalties, is specifically embodied in another of the proposed regulations. Section 1.613A–7(f)(1) states:

For example, advanced royalties (to the extent that actual production during the taxable year is insufficient to earn such royalties) and lease bonuses, while taken into account for purposes of sections 61 and 612 (relating to the definition of gross income and cost depletion, respectively), would not be taken into account in computing the percentage depletion allowance pursuant to section 613A(c).

Under section 1.613A–7(f)(1), the allowance is *denied* when income is received in a year prior to extraction. Under section 1.613A–3(a)(4)(7), discussed *supra*, the deduction is *allowed* when the situation is reversed and extraction occurs in a taxable year prior to the year in which income results from the production. This inconsistency in the treatment of "production" and "income" arising in different taxable years is not supported by any logic. The purported goal of increasing exploration of domestic sources of oil and gas is an insufficient explanation given that prior law included an incentive to actual production, the "recovery" of a deduction calculated on advance royalties that was not matched with production before the conclusion of the lease term.

vance royalties. There is no explicit statement in any of the pertinent legislative history that Congress intended to achieve such a result. By contrast, the interpretation of the statute urged by the taxpayers results in far less marked a change: section 613A(c) changes the formula for computing percentage depletion for those whose production exceeds the limitation that is stated in terms of "average daily production." This interpretation does not deny the deduction to an entire class of royalty owners.

Absent any clear expression of Congressional intent, in either the statutory language or the attendant legislative history, to deny the percentage depletion allowance to taxpayers in the Engles' situation, we conclude that "production" cannot be read as a prerequisite to the deduction. The judgment of the Tax Court therefore is

Reversed.